IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LATOYA LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:17cv810-WKW-WC |
| | ) | |
| AUBURN HOUSING AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff's complaint before this court asserts that Defendant violated her due process rights and Section 8 of the U.S. Housing Act, 42 U.S.C. § 1437f ("Section 8") as provided by the Department of Housing and Urban Development ("HUD"). Currently pending is Plaintiff's "Emergency Motion for Preliminary Injunction against Defendant" (Doc. 4). In the motion, Plaintiff asks the court to order Defendant "to continue to provide Plaintiff her section 8 benefits during the pendency of this action due to the fact that [Plaintiff] is in imminent danger of losing her home." Doc. 4 at 1. After Defendant was served with Plaintiff's complaint and appeared in the case,[1] the undersigned entered an Order (Doc. 14) on that same day, directing Defendant to show cause, if any there be, why the motion for preliminary injunction should not be granted. Defendant responded (Doc.

---

[1] Plaintiff's Motion for Preliminary Injunction was filed prior to Defendant being served with the complaint.

17), and Plaintiff replied (Doc. 20). As the matter is now fully briefed, it is ripe for recommendation to the United States District Judge.[2]

Prior to delving into the merits of Plaintiff's motion for preliminary injunction, the undersigned believes that a brief summary of the HUD/Section 8 regulatory background, as well as a summary of the factual background in this case, will be helpful in understanding and determining the merits of Plaintiff's motion. Thus, the undersigned first turns to summarize the pertinent HUD/Section 8 regulations, and then turns to provide a summary of the factual evidence derived from the filings of Plaintiff and Defendant, as well as judicially noticed state-court documents related to a currently pending state-court eviction action against Plaintiff.

## I.   Regulatory Background

United States Department of Housing and Urban Development ("HUD") regulations specify when a public housing agency ("PHA") may terminate a participant family's Section 8 housing assistance payments. *See* 24 C.F.R. § 982.552. One such specification allowing termination of assistance arises when a participant family "violates any family obligations" listed in 24 C.F.R. § 982.551. *Id*. at § 982.552(c)(1)(i). Pertinent to this case is the obligation of a participant family to supply "any information that the PHA or HUD determines is necessary in the administration of the program." *Id*. at § 982.551(b)(1).

---

[2] On January 16, 2018, the United States District Judge assigned to this case referred the matter to the undersigned Magistrate Judge "for further proceedings and determination or recommendation as may be appropriate." Doc. 23.

Tenants confronted with adverse action by a PHA are entitled to specific grievance procedures. *See* 42 U.S.C. § 1437d(k). HUD regulations outline the procedures that a PHA must follow before terminating a family's Section 8 housing assistance. *See* 24 C.F.R. § 982.555. These procedural protections include the requirement that a PHA provide a participant family an opportunity for an informal pretermination hearing if the proposed termination is "because of the family's action or failure to act." *Id*. at § 982.555(a)(1)(iv), (a)(2). Also, before the informal hearing occurs, a family "must be given the opportunity to examine . . . any PHA documents that are directly relevant to the hearing." *Id*. at § 982.555(e)(2)(i). At the hearing, "[t]he family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." *Id*. at § 982.555(e)(5). Finally, "[f]actual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." *Id*. at § 982.555(e)(6).

## II.   Factual Background

Plaintiff is a recipient of Section 8 housing assistance via the voucher program. Doc. 1 at 1. Defendant is a local public housing authority that administers the Section 8 housing program.[3] Doc. 17 at 3. In February 2017, Plaintiff and her son moved into housing in Auburn, Alabama, after being accepted into the Section 8 voucher program administered

---

[3]  If approved for the voucher program, a recipient will receive a voucher from the local PHA, and may then use that voucher to locate a suitable rental unit in the private market and to enter into a lease with that landlord. *Id*.

by Defendant. Doc. 1-4 at 1. At the time, Plaintiff was receiving $925.00 per month in Social Security Disability ("SSD"). *Id*. Her rent totaled $550.00 per month and, based upon her Social Security payments, Plaintiff's portion of the rent was approximately $155.00. *Id*.; *see* Ex. C (Doc. 17-1) (DVD of informal termination proceeding).

On or around March 29, 2017, Plaintiff received a letter from Social Security stating that her monthly benefits would change to $791.00 per month. *Id*.; Doc. 17-1 at 7. The letter also provided the following statement about Medicare deductions: "We deduct Medicare medial insurance (Part B) premiums 1 month in advance." Doc. 17-1 at 7. The letter did not state the amount of those premiums, if any. *Id*. Pursuant to her HUD participant family obligations to update Defendant regarding her income, Plaintiff submitted this letter to Laura D. Squiers, the Housing Choice Voucher ("HCV") caseworker, who was assigned to Plaintiff's file. *Id*. at 5.

On May 1, 2017, and May 18, 2017, Ms. Squiers sent letters to Plaintiff requesting additional information about her income. Doc. 17 at 10, 11. Specifically, the letters requested that Plaintiff provide Defendant with an "SSI award letter including the amount deducted for Medicare Part B." *Id*. The letters were sent to Plaintiff via United States mail, but Plaintiff never responded to the letters. *See* Doc. 1-2 at 2-3. The letters were not sent through certified mail,[4] and were returned "because [Plaintiff's mailbox] was full for lack of attention."[5]

---

[4] At the informal termination hearing, Defendant's representative stated that the letters were never sent certified mail because, if they were, Defendant "would go broke." *See* Ex. C (Doc. 17-1).

[5] The hearing officer at the informal termination hearing determined that the letters were returned for Plaintiff's lack of attention to her mail.

4

On or around July 10, 2017, Ms. Squiers sent Plaintiff a letter stating that her housing assistance would be terminated based upon her failure to respond to the two letters Ms. Squiers sent in May.[6] Doc. 1-1. The letter further notified Plaintiff that the termination of assistance would be effective August 9, 2017, and that she would be responsible for her entire rent as of that date, pending the result of an informal hearing on the issue, if requested. *Id*. Plaintiff received that letter on or about July 10, 2017. Doc. 1-4 at 2.

Pursuant to her right provided in the letter, Plaintiff requested an informal hearing, and Ms. Squiers sent Plaintiff a letter, dated July 26, 2017, stating that her informal hearing was scheduled for August 8, 2017, at 10:00 a.m. Doc. 17-1 at 14. At the hearing, the hearing officer heard testimony from Ms. Squiers. Doc. 1-2 at 1-2. Ms. Squiers introduced into evidence the May letters that requested more information from Plaintiff regarding the amount of money she was receiving from Social Security. *Id*. at 1. She testified that Plaintiff responded to neither letter. *Id*.  at 1-2. She also presented Plaintiff's March 2017 letter from Social Security that notified Plaintiff that her benefits would change; Plaintiff's July 2017 Notice of Termination of Assistance; and, amongst other documents, Defendant's Rules and Responsibilities and Plaintiff's signed copy of her Family Certification Briefing. *Id*. at 5-19. The Rules and Responsibilities document states that HUD regulations permit Defendant "to terminate assistance to participants if any household member . . . does not abide by the following family obligations . . . : 1. Supply

---

[6] The termination notice specifically stated that Plaintiff's assistance would be terminated because of her "[f]ailure to respond to two document requests for SSI award letter with amount deducted for Medicare Part B." Doc. 1-1.

any information that [Defendant] determines to be necessary. This includes evidence of . . . income and deductions." *Id.* a 17.

The hearing officer also heard testimony from Plaintiff. Doc. 1-2 at 3. Plaintiff reported that she did not receive the May notices from Defendant, and that she did not realize that Defendant needed more information from her. *Id.* She also stated that she has experienced problems receiving her mail in the past, although the hearing officer noted that "[t]here was no evidence to prove that she does have problems sometimes with her receipt [of mail] from the Postal Service."[7] *Id.* Plaintiff is living on a fixed income and cannot afford to live in her home if assistance is terminated. *Id.*

On August 15, 2017, the hearing officer issued her decision letter to Plaintiff, notifying Plaintiff that, based upon the evidence at the hearing, Plaintiff's Section 8 housing assistance would be terminated. Doc. 1-2. As part of the hearing officer's reasoning for that termination, the decision states that "[m]aintaining a place to live is a responsibility that requires careful attention on the part of the lease holder. . . It appears that the HCV Department followed the rules and regulations of the Housing Authority and HUD. Based on the evidence presented by the HCV Department and the efforts made to contact the tenant, the decision is to rule favorably in the actions taken by the Housing Authority. [Defendant's] actions were in accordance with the Housing Choice Voucher Rules and Regulations." *Id.* at 3.

---

[7] The undersigned notes that Plaintiff's aunt, who was at the informal hearing and assists Plaintiff with her affairs, testified that Plaintiff had reported to her issues with not receiving her mail in the past. *See* Ex. C (Doc. 17-1).

On August 15, 2017, Defendant terminated Plaintiff's Housing Assistance Payments ("HAP") to Plaintiff's landlord. Doc. 1 at 2. On October 12, 2017, Plaintiff received notification from her landlord, AHA Development, LLC, that her lease would be terminated.[8] *See AHA Development, LLC v. Latoya A. Love*, DV-2017-900413.00 (Doc. 2). The letter gave Plaintiff the right to reply and to request an informal settlement conference and/or hearing with Defendant, and stated that the effective date of the lease termination would be October 26, 2017. *Id*.

On November 9, 2017, AHA Development, LLC, filed an eviction action against Plaintiff in state court. *Id*. (Doc. 1). On November 17, 2017, Plaintiff (obviously, the defendant in state court) filed a motion to dismiss the eviction action in state court. *Id*. (Doc. 7). While the state-court motion to dismiss was pending, Plaintiff filed suit in this court on November 28, 2017, requesting declaratory, injunctive, and other relief. Doc. 1. In Plaintiff's claim for relief, Plaintiff requested that this court "[e]nter a preliminary injunction prohibiting the Plaintiff's eviction pending the outcome of this matter."[9] Doc. 1 at 3. Plaintiff's motion to dismiss the state-court eviction action was denied on December

---

[8] This information was gathered through state-court documents pertaining to a state-court eviction action that is currently pending against Plaintiff. The undersigned takes judicial notice of the state-court documents.

[9] Notably, the complaint does not inform the court that a state-court eviction proceeding had already been filed against Plaintiff. *See generally* Doc. 1. Nor does the complaint, or any of the documents supporting the complaint, state any fact by which the undersigned could determine the date upon which Plaintiff could have been subject to eviction, as there was no indication that eviction proceedings against Plaintiff had begun. *Id*.

1, 2017, and set for trial on December 19, 2017. *AHA Development LLC*, DV-2017-900413.00 (Doc. 15).

On December 14, 2017, Plaintiff filed in this court an "Emergency Motion for Preliminary Injunction."[10] Doc. 4. On December 18, 2017, Plaintiff filed a motion to continue the eviction action in state court, citing the Motion for Preliminary Injunction filed in this court on December 14th. *AHA Development LLC*, DV-2017-900413.00 (Doc. 20). The state court entered an order on December 18th resetting the trial for January 16, 2018. *Id*. (Doc. 23).

Defendant was served with Plaintiff's federal court complaint on December 19, 2017, and answered on January 8, 2018. *See* Docs. 9, 13. That same day, the undersigned entered an Order directing Defendant to show cause, on or before January 10, 2018, why the motion for preliminary injunction should not be granted. Doc. 14. The undersigned afforded Plaintiff until January 12th to reply. *Id*.

Plaintiff's state-court eviction has been reset for February 13, 2018, at 2:00 p.m. *AHA Development LLC*, DV-2017-900413.00 (Doc. 35).

### III.    Plaintiff's Motion for Preliminary Injunction

Having provided that regulatory and factual background, the undersigned now turns to Plaintiff's motion for preliminary injunction. As stated previously, Plaintiff's motion

---

[10] There is no indication that Defendant received notice of the motion for preliminary injunction at the time it was electronically filed by Plaintiff, as Defendant had not yet  appeared in the case. The undersigned notes that, pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction may not issue without notice to the adverse party. Thus, before action on the preliminary injunction could be taken, Defendant was required to have notice of the motion and an opportunity to be heard. Fed. R. Civ. P. 65(a).

requests that the court order Defendant "to continue to provide the Plaintiff her section 8 benefits during the pendency of this action due to the fact that [Plaintiff] is in imminent danger of losing her home." Doc. 4 at 1.

To obtain a preliminary injunction, a movant must show: (1) a substantial likelihood that the plaintiff will prevail on the merits; (2) there exists a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs the harm the preliminary injunction would inflict on the non-movant; and (4) the granting of the preliminary injunction would not disserve the public interest. *See, e.g., CBS Broadcasting, Inc. v. Echostar Commc'ns Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998). In the Eleventh Circuit, "'[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion' as to the four requisites." *Id.* (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.,* 887 F.2d 1535, 1537 (11th Cir. 1989)) (internal quotation marks omitted).

### A.  Whether there is a Substantial Likelihood that Plaintiff Will Succeed on the Merits of her Claims.

The undersigned turns to examine the first requirement for issuance of a preliminary injunction—i.e., whether there is a substantial likelihood that Plaintiff will succeed on the merits of her claim. As noted above, Plaintiff's complaint asserts a due process claim along with a claim that her rights under 42 U.S.C. § 1437 were violated. *See* Doc. 1 at 3 (Plaintiff seeks relief "to redress Defendant's deprivation of Plaintiff's rights under the U.S. Housing

Act of 1937, 42 USC [§] 1437, and her constitutional right to due process secured by the 5th and 14th Amendments to the U.S. Constitution."). The undersigned will address Plaintiff's likelihood of success on the merits of each claim, in turn.

### 1. Whether there is a Substantial Likelihood that Plaintiff Will Succeed on the Merits of her Due Process Claim.

Defendant argues that Plaintiff was afforded due process in regards to her termination of assistance under the program, and, therefore, she does not have a substantial chance of success on the merits of her due process claim. Doc. 17 at 7. Defendant asserts that Plaintiff was "provided with adequate notice of termination and an informal hearing in accordance with HUD regulations, wherein [Defendant] met its burden to establish violations of HUD regulations justifying termination." *Id*. Defendant further asserts that "Plaintiff failed to produce evidence at the hearing to justify her noncompliance with HUD requirements[, and that] [a]n impartial hearing officer weighed the evidence and issued a determination in accordance with the facts presented[.]" *Id*.

In order to terminate Section 8 housing assistance, due process requires: (1) timely and adequate notice, including the reasons for the proposed termination; (2) an opportunity to be heard at a pre-termination hearing, including the right to present evidence and confront and cross-examine witnesses; (3) a right to be represented by counsel at the hearing; (4) a written decision, including the reasons for the determination and the evidence on which the decisionmaker relied; and (5) an impartial decision maker. *McCall v. Montgomery Hous. Auth.*, 809 F. Supp. 2d 1314, 1324 (M.D. Ala. 2011) (citing *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970)). The Housing Authority has the burden of

persuasion in Section 8 termination hearings, and "must initially present sufficient evidence to establish a *prima facie* case" that a participant violated her Section 8 obligations in a manner justifying termination. *Basco v. Machin,* 514 F.3d 1177, 1182 (11th Cir. 2008). Thereafter, the Section 8 participant has the burden of production to show that a violation warranting termination did not occur. *Id.*

As to whether Plaintiff received sufficient due process prior to the termination of her benefits, an adequate notice of termination must "give the family prompt written notice that the family may request a hearing," 24 C.F.R. § 982.555(c)(2), and must: "(i) Contain a brief statement of reasons for the decision; (ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and (iii) State the deadline for the family to request an informal hearing." 24 C.F.R. § 982.555(c)(2)(i)–(iii). Based on the record before this court, Defendant complied with the notice requirements set forth in the regulations. *See* Doc. 1-1. Specifically, Defendant sent Plaintiff a termination notice, which Plaintiff received, stating that Plaintiff's benefits would be terminated for "[f]ailure to respond to two document requests for SSI award letter with amount deducted for Medicare Part B." *Id.* The termination notice further informed Plaintiff that "[y]ou have the right to request an informal hearing, with representation of your choice, to review this decision. Contact this office in writing within (10) ten days to request this hearing. Upon receipt of your written request, we will schedule the hearing." *Id.* This notice meets the requirements laid out by 24 C.F.R. § 982.555(c)(2). Thus, the first factor for determining whether Plaintiff was afforded due process is satisfied.

As to the second consideration, the opportunity to be heard is "[t]he fundamental requisite of due process of law. . . ." *Goldberg*, 397 U.S. at 267 (citation omitted). This entails that "[t]he hearing must be 'at a meaningful time and in a meaningful manner,'" *id.* (citation omitted), and that the public assistance recipient have "an effective opportunity to defend [against termination] by confronting any adverse witnesses and by presenting [her] own arguments and evidence orally," *id.* at 268. Although "[i]nformal procedures will suffice," *id.* at 269, the recipient must be allowed to retain an attorney if she so desires, *id.* at 270, and "have an opportunity to examine any documents or records or regulations related to the proposed action," 42 U.S.C. § 1437d(k)(3). Based on the record before this court, Plaintiff was afforded the opportunity to confront adverse witnesses against her— i.e., Ms. Squiers—and was allowed to present her own arguments and evidence at the termination hearing. Plaintiff was notified that she could retain representation for the hearing, although she did not.[11] Further, because Plaintiff does not argue otherwise, the undersigned assumes that Plaintiff was presented with a sufficient opportunity to examine the documents provided at the hearing. Thus, it appears that the second factor for determining whether Plaintiff was afforded due process is satisfied.[12]

---

[11] Plaintiff does not argue that she was not afforded an adequate opportunity to retain counsel for the hearing. Thus, the undersigned will presume for purposes of this recommendation that the opportunity to retain counsel was sufficient.

[12] To the extent Plaintiff's claim that she did not receive due process rests upon the hearing officer's reliance upon impermissible hearsay, the undersigned notes that evidence may be considered at a termination hearing "without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555(e)(5). However, "[a]lthough the rules of evidence are not strictly applied in administrative hearings, there are due process limits on the extent to which an adverse administrative determination maybe based on hearsay evidence." *Basco*, 514 F.3d at 1182. "'[H]earsay may constitute substantial evidence in administrative proceedings as long as factors that assure the 'underlying reliability and probative value' of the evidence are present.'" *Id.* (quoting *U.S. Pipe & Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir.

As to the third consideration, Defendant's termination notice clearly stated that Plaintiff had the right to be represented by counsel. Although it appears that Plaintiff was not represented at the hearing, Plaintiff does not argue that Defendant's notice to her regarding her ability to retain counsel was insufficient in any way. Thus, the third consideration for determining whether Plaintiff was afforded due process is satisfied.

As to the fourth consideration, Defendant provided Plaintiff with a written decision, which included the reasons for the determination and the evidence on which the decisionmaker relied. Plaintiff does not argue that this written decision was insufficient. Thus, the fourth consideration for determining whether Plaintiff was afforded due process is satisfied.

As to the fifth and final consideration, Plaintiff, in a conclusory fashion, asserts that the decisionmaker in her termination hearing was not impartial. "It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *McKinney v. Pate,* 20 F.3d 1550, 1561 (11th Cir. 1994). When a plaintiff complains that she was denied an impartial decisionmaker, she "must show actual bias on the part of the

---

1979)). "The reliability and probative force of such evidence depend on 'whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.'" *Id.* (quoting *J.A.M. Builders, Inc. v. Herman,* 233 F.3d 1350, 1354 (11th Cir. 2000)). The undersigned finds that Plaintiff's due process rights were not violated based upon the hearing officer's reliance on impermissible hearsay. As noted in the factual background section of this recommendation, many of the documents presented at the hearing were issued to Plaintiff by Ms. Squiers, who also testified at the hearing. Further, even if the documents were not created by Ms. Squiers, the undersigned concludes that they are inherently reliable and probative evidence that would have been properly considered even without the opportunity to examine the individual who created them.

13

decisionmaker such that the decisionmaker is incapable of judging the dispute fairly. This bias may be personal or official. Official bias exists where there is a conflict of interest between the parties. Personal bias exists when the decisionmaker may harbor personal animosity toward the plaintiff." *Suber v. Bulloch Cty. Bd. of Educ.,* 722 F. Supp. 736, 740 (S.D. Ga. 1989). In the context of HUD regulations, an informal hearing regarding the termination of benefits "may be conducted by a person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person." 24 C.F.R. § 982.555(e)(4)(i). Plaintiff has not provided any evidence of bias— either personal or official—as to the decisionmaker in her informal termination hearing. Nor has Plaintiff argued that the hearing officer did not satisfy the requirements of § 982.55(e)(4)(i). Thus, the fifth consideration for determining whether Plaintiff was afforded due process is satisfied.

Accordingly, as all five procedural safeguards have been met for ensuring due process, it does not appear, based upon the facts known at this time, that Plaintiff is likely to succeed on the merits of her due process claim.

## 2. Whether there is a Substantial Likelihood that Plaintiff Will Succeed on the Merits of her Claim under 42 U.S.C. § 1437.

Plaintiff asserts that the decision to terminate her Section 8 benefits "was based upon reasons not authorized by the Act or the regulations governing the program is without any legal authority and is therefore arbitrary and capricious[.]" Doc. 1 at 2. She asserts that Defendant failed to provide any evidence of wrongdoing on her part and evidence that program violations occurred. *Id*. In her motion for preliminary injunction, Plaintiff supports

14

her conclusion that she is likely to succeed on the merits of this claim with the following assertions: (1) it is undisputed that Plaintiff did not receive the notices from Defendant requesting additional information regarding the money she received from Social Security, as those letters were returned to Defendant unopened; (2) it is undisputed that Plaintiff's income never actually changed, and that the adjustment Defendant believed was due would have only *decreased* Plaintiff's share of the rent (meaning she paid too much rent instead of too little); and (3) there is clearly no level of intentional misconduct on the part of Plaintiff. Doc. 4 at 3. Thus, Plaintiff argues that Defendant's decision to terminate her benefits "is contrary to both HUD regulations and the case law interpreting them." *Id*.

Defendant opposes such a conclusion, and argues that it is "sound public policy" for the court to "afford the fact-finding of local housing authorities deference." Doc. 17 at 10. For support, Defendant recounts the evidence presented to the hearing officer at Plaintiff's termination hearing, arguing that these factual an dlegal conclusions do not offend due process or, presumably federal law, simply because Plaintiff disagrees with the outcome. *Id*. at 5-7, 11. Specifically, Defendant points to the hearing officer's conclusion that the May letters requesting information from Plaintiff were returned because Plaintiff's "mailbox was full for lack of attention[,]" and that Defendant "cannot be responsible for [a] tenant not going tothe [sic] mailbox which results in notices being returned by the Post Office." *Id*. at 6; Doc. 1-2 at 3. Defendant further asserts that Plaintiff's equitable arguments—i.e., her assertions as to what could have resulted from proper disclosure of her Social Security information and her testimony that she had trouble receiving mail in

the past—are of no consequence to whether the determination runs afoul of federal law or Plaintiff's constitutional rights. *See generally* Doc. 17.

Determining whether Plaintiff's claim that her rights under federal housing law were violated has merit requires the undersigned to review the decision of an administrative agency. The standard to be applied for agency review is found in 5 U.S.C. § 706(2)(A), which states that reviewing courts "may hold unlawful and set aside agency action, findings, and conclusions found to be [ ] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See also Home Health Serv. of the U.S., Inc. v. Schweiker*, 683 F.2d 353, 356–57 (11th Cir. 1982) ("The scope of review of agency actions is limited to a determination of whether the Board's findings are arbitrary, capricious, an abuse of discretion, not in accordance with the law or unsupported by substantial evidence in the record as a whole.").

In making this determination, the undersigned is reminded, as Defendant has pointed out, that deference should be given to the decision of the hearing officer if the court is "satisfied that the hearing officer's conclusions are supported by substantial evidence." *Clark v. Alexander*, 85 F.3d 146, 151–52 (4th Cir. 1996). In the context of judicial review of agency actions, substantial evidence means such relevant evidence as a *reasonable* mind might accept as adequate to support a conclusion. *See, e.g., Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). Under this narrow standard of review, a court lacks the power to substitute its judgment for that of the administrative agency. If the agency's findings are supported by substantial evidence and, thus, are not arbitrary or capricious, the reviewing court *cannot* reverse the findings of the agency on the basis that it would have decided the

16

case differently. *See, e.g., NLRB v. Nev. Consolidated Copper Corp.*, 316 U.S. 105, 106-07 (1942); *Harvey v. Nunlist*, 499 F.2d 335, 335 (5th Cir. 1974).

Here, Plaintiff's Section 8 housing assistance was terminated because she allegedly did not comply with the reporting requirements under her obligations as a participant. Specifically, Defendant based its termination upon Plaintiff's failure to supply information regarding the amount deducted for Medicare Part B from her Social Security payments. Doc. 17-1 at 10, 11; *See generally* Doc. 1-2. The relevant law pertaining to this violation and Defendant's authority to terminate her from the program for that violation is as follows:

> (1) Grounds for denial or termination of assistance. The PHA *may* at any time deny program assistance for an applicant, or terminate program assistance for a participant, for any of the following grounds:
>> (i) If the family violates any family obligations under the program (see § 982.551)[.]

24 C.F.R. § 982.552(c)(1) (emphasis added). Section 982.551 states that a participating family "must supply any information that the PHA or HUD determines is necessary in the administration of the program[.]" *Id.* at § 551(b)(1). In determining whether termination of assistance is warranted for a violation of the family obligations,

> (i) The PHA *may* consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

24 C.F.R. §§ 982.552(2)(i) (emphasis added).

As an initial note, the undersigned is generally troubled that Plaintiff, who is under the care of mental health professionals[13] and has a child who is living with her in Section 8 housing,[14] could be rendered homeless for failing to respond to two letters—which she undoubtedly did not receive—requesting that she submit the amount of her Medicare Part B deduction—when, according to Plaintiff, such a deduction was inapplicable to Plaintiff in the first place. This concern is compounded by the fact that Plaintiff, clearly in an attempt to comply with the family obligations, initially supplied Defendant with her Social Security letter that stated a *decrease* in the amount of income she would receive, which would potentially require her to pay less instead of more of the portion of rent to her landlord.[15] And, further, the undersigned is concerned that, at the time Plaintiff requested an informal termination hearing, she attempted to provide Defendant with the paperwork that had been requested, but was informed that it was too late to stop the termination proceedings. *See* Ex. C (Doc. 17-1). Nonetheless, the undersigned recognizes that, although these facts are troubling, such troubles do not necessarily dictate the legal outcome of Plaintiff's motion for a preliminary injunction because of the deference afforded to agency decisions. With that said, however, the undersigned concludes, under the facts known at this time, that the

---

[13] This fact was before the hearing officer at Plaintiff's informal termination hearing. During an exchange regarding Plaintiff's claim that she did not receive all of her mail from the Postal Service, it was made known that Plaintiff had previously had difficulty receiving communication from her mental health doctors. *See* Ex. C (Doc. 17-1).

[14] It does not appear that this fact was before the hearing officer at Plaintiff's informal termination hearing. *See* Ex. C (Doc. 17-1).

[15] At the informal hearing, Ms. Squiers noted that what set Plaintiff's termination in motion was Plaintiff's submission of the March 2017 Social Security letter that did not provide complete information regarding the amount of Medicare B deductions Plaintiff should receive. *See* Ex. C (Doc. 17-1).

hearing officer's decision upholding Defendant's termination of Plaintiff's Section 8 housing assistance is likely arbitrary and capricious, and not in accordance with federal law.

The undersigned recalls that HUD regulations allow for the termination of benefits if a tenant fails to "*supply* any information that the PHA or HUD determines is necessary in the administration of the program." 24 C.F.R § 982.551(b)(1) (emphasis added). Inherent in a tenant's ability to supply information is the PHA's request for information and the tenant's receipt of that request. Indeed, it would be unbelievably difficult for a tenant to supply information to the PHA if the tenant is unaware that the PHA is requesting information. If that were the case, the tenant would need—for all intents and purposes—to be able to read the mind of the PHA to know what information was needed without a request for the information, and then to respond to that need of their own volition. Such a requirement to report information to the PHA that the tenant does not know the PHA needs would essentially rewrite the regulations to penalize the tenant for not *receiving* the request for information instead of *supplying* the information. This rewritten version of the regulations would state that the tenant must "supply any information—regardless of whether the tenant receives notice of the request for information—that the PHA or HUD determines is necessary in the administration of the program." *See id*. (obviously, amended). That result is nonsensical and imposes an impossible burden upon Section 8 tenants. Surely such a requirement imposing an impossible burden is an arbitrary decision, and contrary to the purpose of the HUD regulations in the first place.

To be sure, there may be times when a tenant intentionally avoids receipt of certain documents from the PHA or HUD in order to avoid reporting information. In those cases, the culpability of the tenant in intentionally avoiding notice could mitigate that there was a violation of the family obligations to report. *See Carrier v. Hernandez*, No. 401992/02, 2006 WL 2882353, at *2 (N.Y. Sup. Ct. July 17, 2006) (holding that there was sufficient evidence to conclude that the mailing procedures of the housing authority were complied with, and that because only the certified mailings were returned as unclaimed (which meant that the addressee abandoned or failed to call for the mail) and the regular mailing was not returned, it could be inferred that the tenant was attempting to avoid notice by ignoring the certified mailings). However, there is no evidence of intentional avoidance in Plaintiff's case. At best, Plaintiff did not receive the requests for information from Defendant because of an error outside of her control. At worst, Plaintiff was negligent in checking her mail, and the mail was returned to Defendant. While the hearing officer made a factual determination that the latter was the case and based her decision to uphold Defendant's termination of Plaintiff's benefits upon that factual conclusion, it seems to the undersigned that the legal conclusion that Plaintiff violated her obligation to report information to Defendant does not flow from the factual conclusion that Plaintiff did not receive notice to report such information to Defendant. Indeed, the undersigned finds that this evidence would not lead a reasonable mind to conclude that a violation of the family obligations had occurred. Thus, the undersigned concludes that the hearing officer's decision to terminate Plaintiff's Section 8 housing assistance is not based upon substantial evidence, and is likely arbitrary and capricious.

20

Assuming *arguendo* that Plaintiff committed a technical violation of her family obligations under the program by failing to respond to the May notices requesting information regarding her income (regardless of the fact that she was not aware of the need to report the information), the undersigned is also unable to conclude that such a violation warrants the drastic measure of terminating Plaintiff's Section 8 housing assistance. Guiding this conclusion is 24 C.F.R. § 982.552(h), wherein PHAs are expressly granted the discretion to consider all of the surrounding circumstances when deciding whether to terminate a participant's Section 8 housing assistance, including the seriousness of the infraction; the culpability of the head of the household; mitigating circumstances related to the disability of a family member; and the impact of termination on other household members. 24 C.F.R. § 982.552(h) ("The PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.").

While the regulations do not *require* consideration of the mitigating factors, it seems that—if there ever was a reason to consider mitigating factors—Plaintiff's case would be the case in which they should be considered. *See Rawlings v. Washington Cty. Hous. & Redevel. Auth.*, No. A06-1257, 2007 WL 2034356, at *5 (Minn. Civ. App. July 17, 2007) (noting that the plain language of 24 C.F.R. § 982.55(c)(2) is permissive and does not require consideration of the mitigating factors). Indeed, Plaintiff has a child that lives under her roof. Plaintiff is under the care of a mental health professional and requires assistance

from her aunt to handle her affairs. Plaintiff's violation is, at least in the eyes of the undersigned, not at all severe considering that, arguably, the practical result of the violation caused Plaintiff to pay more than her share of rent for her housing instead of less.[16] And, there was no evidence of any culpability on the part of Plaintiff in failing to comply with the family obligations. She remitted the Social Security letter to Defendant stating that her income changed, and there was no showing that Plaintiff intentionally prevented receipt of the May letters in order to avoid disclosing a Medicare B deduction. Although every factor for mitigation appears to the undersigned to be in favor of Plaintiff, the hearing officer's decision does not indicate that these factors were even considered. The undersigned concedes that many of these mitigating factors may not have been presented well—or at all—before the hearing officer. However, even without proper argument of the mitigating factors, it is clear that the hearing officer should have been aware—at minimum—of Plaintiff's lack of culpability in her failure to respond to the request and that she is receiving mental health treatment of some kind.[17]

In conclusion, therefore, the undersigned finds that Plaintiff has demonstrated a substantial likelihood of success on the merits of her claim that Defendant's decision to

---

[16] It appears that even after Plaintiff's income from Social Security was reduced to $791.00 per month, she continued to pay $155.00 per month for rent. If her income had been reduced, then it would flow that the amount of rent she was responsible for would also have been reduced.

[17] The undersigned clarifies that the conclusion that the hearing officer's decision was arbitrary and capricious does not rely upon the hearing officer's failure to consider mitigating factors. Indeed, because the mitigating factors are permissive and not mandatory, the undersigned cannot conclude that the failure to consider them would make the decision arbitrary and capricious. However, the undersigned finds it peculiar that the factors were not discussed in the written decision, making it unclear whether the decision officer considered them at all in making her determination.

terminate her Section 8 housing assistance was arbitrary and capricious and contrary to federal law and regulations, thus satisfying the first of the four factors required to grant a preliminary injunction.[18]

## B. Whether Plaintiff Has Established the Remaining Factors for a Preliminary Injunction to Issue.

Plaintiff argues that she is in imminent danger of losing her home if the court does not order Defendant to continue to provide Plaintiff her Section 8 housing assistance. Doc. 4 at 1. Citing a Northern District of Alabama case, Plaintiff appears to argue, via caselaw, that there exists a substantial threat that she will suffer irreparable injury if the injunction is not granted; that the threatened injury to her outweighs the harm the preliminary injunction would inflict on Defendant; and that the granting of the preliminary injunction would not disserve the public interest. In her reply to Defendant's response in opposition to the motion for preliminary injunction, Plaintiff specifically argues that she will suffer irreparable harm if the injunction does not issue because she "and her son would be

---

[18] *See, e.g., Johnson v. Fort Walton Beach Hous. Auth.*, No. 3:11cv506-MCR/EMT, 2012 WL 10688344, at *5 (N.D. Fla. Jan 5, 2012) (holding that a Section 8 housing assistance recipient demonstrated a substantial likelihood of success on her claim that she did not receive constitutionally meaningful process, that she was arbitrarily terminated from the program, and that the housing authority's policy violated federal law when she missed two meetings and failed to provide required documentation due to the PHA's policy that children were not allowed in the required meeting); *Carter v. Olmsted Cty. Hous. & Redevelopment Auth.*, 574 N.W. 2d 725, 733 (Minn. Ct. App. 1998) (holding that a tenant receiving Section 8 housing assistance who failed to provide tax returns for use in determining whether the family met the income requirements could not be used as a basis for termination under the failure to report without some indication that the returns existed); *Gist v. Mulligan*, 886 N.Y.S. 2d 172, 173 (N.Y. Sup. Ct. App. 2009) (holding that the decision to terminate a Section 8 tenant who failed to complete her annual form for re-certification of eligibility and to appear for her re-certification appointment was so disproportionate to the offenses committed as to be shocking to one's sense of fairness); and *McClarty v. Greene Metro. Hous. Auth.*, 963 N.E. 2d 182, 186 (Ohio Ct. App. 2011) (holding that the decision to terminate a Section 8 housing assistance recipient, who failed to report child support income and argued that the failure was unintentional, was arbitrary and capricious absent a finding of intent to deceive or a pattern of conduct demonstrating serious disregard for her participant obligations).

23

rendered homeless by [Defendant's] decision to terminate their Section 8 housing assistance benefits." Doc. 20 at 4. As to the balance of hardships, Plaintiff argues that the scale tips in her favor because her "benefits were terminated only because of [her] failure to receive her mail [and that she] has since provided all necessary paperwork." *Id*. at 5. She further states that Defendant has presented no evidence that Plaintiff "does not continue to meet the substantive program requirements . . . nor has it presented any evidence that [Plaintiff] is currently able to afford housing at market rates without assistance." *Id*. Finally, as to the public interest factor, Plaintiff asserts that, because Section 8 housing assistance was designed for the purpose of aiding low-income families in obtaining a decent place to live, the public interest is served "by ensuring that participants are afforded housing benefits to which they [are] entitled." *Id*.

The undersigned agrees that Plaintiff has demonstrated an irreparable injury—that she will be displaced from her home if Defendant is not required to continue providing Plaintiff with Section 8 housing assistance benefits during the pendency of this action. *See Johnson v. U.S. Dep't Agric.,* 734 F.2d 774, 789 (11th Cir. 1984) (reversing the district court's denial of preliminary injunction to prevent nonjudicial foreclosure and holding "irreparable injury is suffered when one is wrongfully ejected from his home.") The Eleventh Circuit has explained that "[r]eal property and especially a home is unique. [Section 8 plaintiffs] suffer irreparably if they must live in inadequate, often health endangering housing for any period of time as a consequence of a wrongful ejectment." *Id. See also Badri v Mobile Hous. Bd.,* Civil Action No. 11-0328-WS-M, 2011 WL 3665340, at *3 (S.D. Ala. Aug. 22, 2011) (granting a Section 8 plaintiff's motion for preliminary

injunction concluding "significant reduction in public benefits to impoverished citizens constitutes irreparable injury to them.") (citations omitted). Thus, because it appears that Plaintiff and her child will lose their home if Defendant does not continue providing Section 8 housing assistance benefits to Plaintiff, the undersigned concludes that Plaintiff has demonstrated she will be irreparably harmed if the preliminary injunction does not issue.

Next, the undersigned must consider whether the threatened injury—Plaintiff's termination of Section 8 housing assistance benefits and ultimate displacement from her current residence if the injunction does not issue—outweighs the possible harm that the injunction may cause to Defendant. *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers,* 788 F.3d 1318, 1322 (11th Cir. 2015). The undersigned concludes that Plaintiff's displacement from her current residence outweighs any harm that the injunction may cause Defendant. It appears that Plaintiff continues to meet the substantive program requirements for Section 8 housing assistance, and that she is likely unable to afford housing at market rates without assistance. The undersigned finds that the possibility of homelessness compared with the requirement that Defendant continue to remit Plaintiff Section 8 housing assistance benefits weighs in favor of granting the preliminary injunction.

Finally, the undersigned must determine whether the issuance of the injunction is in the interest of the public. The undersigned finds that the public interest is served when Section 8 housing recipients are afforded a full opportunity to adjudicate their claims of federal violations prior to being terminated from the program. Indeed, the United States

Supreme Court has specifically held that in the context of proceedings terminating federal housing aid "[t]hese [due process] rights are important . . . where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or *on misapplication of rules or policies to the facts of particular cases." Goldberg,* 397 U.S. at 267 (emphasis added). Thus, the undersigned finds that this factor weighs in favor of granting the preliminary injunction.

Accordingly, because Plaintiff has satisfied all four requirements for a preliminary injunction to issue, the undersigned concludes that the injunction should issue.

Therefore, it is the

RECOMMENDATION of the undersigned Magistrate Judge that Plaintiff's Motion for Preliminary Injunction (Doc. 4) be GRANTED and that Defendant be ORDERED to continue providing Plaintiff with Section 8 housing assistance benefits throughout the pendency of this litigation.  Further, it is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before January 30, 2018**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 16th day of January, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE